■ DAVID GRAUBART, INC., Appellant-Respondent, v BANK LEUMI TRUST COMPANY OF NEW YORK, Respondent-Appellant.—Order, Supreme Court, New York County, entered May 23, 1978, and judgment entered May 25, 1978, denying plaintiff's motion for summary judgment on the fourth cause of action and granting defendant's cross motion for summary judgment severing and dismissing the first, second, third and fifth causes of action is affirmed, without costs and without disbursements. The parties have limited their arguments to the fourth cause of action. Plaintiff was issued a check by the Prins Diamond Company drawn on the defendant bank. On October 21, 1976, plaintiff deposited the check in its account at the National Bank of North America (hereinafter referred to as National) who forwarded same through the clearing house to defendant who received it on Friday, October 22, 1976, marked it "insufficient funds" after canceling its "paid" stamp and forwarded the check to the clearing house on Monday, October 25, 1976. The clearing house forwarded the check to National on October 26, 1976. The first, second, third and fifth causes of action involve this transaction. The fourth cause of action, or the current bone of contention, derives from the fact that on November 4, 1976, the defendant instructed the plaintiff to redeposit the check which the plaintiff did through National. National, in turn, forwarded the check directly to defendant, bypassing the clearing house. Defendant returned the check on November 16, 1976, still not accepted. During the course of these exercises, the original drawer of the check made an assignment for the benefit of creditors and plaintiff received no payment on the instrument. Plaintiff now seeks to recover the amount of the check from defendant. Plaintiff argues that defendant took so long to return the check (12 days) that it thereby not only violated a statute, but prevented plaintiff from taking other methods to protect itself. The statute in question is section 4-302 of the Uniform Commercial Code, "Payor Bank's Responsibility for Late Return of Item" which requires return to be made at a specified time and sets the measure of damage: "In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of (a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depository bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depository bank, does not pay or return the item or send notice of dishonor until after its midnight deadline". Subdivision (h) of section 4-104 of the Uniform Commercial Code defines "Midnight deadline" as midnight of its next banking day following the banking day on which it receives the relevant item or from which the time for taking action commences to run, whichever is later. For purposes of the fourth cause of action, then, defendant was a payor bank and had not returned the check by the midnight deadline as an uncollectible. Plaintiff chooses to construe the applicable section of the Uniform Commercial Code

strictly, and inveighs against banks making their own "private little rules". Defendant, on the other hand, sees the delay as an agreement embodied in the customs and practice of banks and also pointed out that plaintiff's bank forwarded the once-dishonored check to defendant with a covering letter instructing them to remit their cashier's check when paid. Defendant considers this an instruction to hold the check as long as practicable without regard to the "Midnight deadline". This notice does not establish a custom or practice among banks and the request to settle "when paid" does not seem to constitute an agreement among banks to waive or otherwise ignore the midnight deadline. Section 4-103 of the Uniform Commercial Code does permit an agreement to determine the standards of a bank's responsibility; however the existence of such an agreement within the framework of customs and practices of banks would be solely within the knowledge of the banks. Questions arise here as to accommodation customs and practices of the banking community, and as to whether the resubmission of a check by one bank directly to another with an "advice to customer" with a "when paid" clause, is in fact an agreement to set aside the midnight deadline requirement of the statute. Insufficient facts have been presented to establish that there are no issues which would justify summary judgment. Concur—Kupferman, J. P., Evans, Lane and Sandler, JJ.

Sullivan, J., dissents in a memorandum as follows: I do not believe that any factual issue exists, and accordingly, would award summary judgment in favor of defendant Bank Leumi Trust Co. of N. Y. on the fourth cause of action, which is based on defendant's "late" return of a check. Briefly, the facts are that plaintiff David Graubart, Inc., was the payee on a check for $1,300 dated October 20, 1976, drawn by Prins Diamond Company (which eventually went bankrupt), on its account at Bank Leumi. Plaintiff deposited the check on October 21 in its account at National Bank of North America, which, under normal banking procedure, forwarded it to the New York Clearing House. The check was delivered to Bank Leumi on Friday, October 22. On the next business day, Monday, October 25, Bank Leumi returned the check to the clearing house for insufficient funds. Bank Leumi's "Paid" stamp was marked canceled. On November 4, 1976, plaintiff delivered the check to National Bank, which forwarded it directly to Bank Leumi on a collection basis, rather than by ordinary banking channels through the clearing house.* It is alleged by Bank Leumi, through the affidavit of an assistant vice-president, that the second presentment of the check was in accordance with a custom and practice existing between banks, as an accommodation to each other, to effect collection of checks previously returned for insufficient funds. The check is sent directly to the drawee bank for collection instead of by regular banking channels. The drawee bank holds the check until such time as funds come into the drawer's account sufficient to pay the check, or until either the forwarding or paying bank determines that the check has been held long enough, in which case the check is then returned. Plaintiff contends that there is no statutory provision authorizing this accommodation presentment which would excuse a drawee bank from the statutory implications of a "late" check. In any

---

* Plaintiff's claim that it deposited the check in its corporate account on November 4, 1976 should be rejected as being no more than a facile characterization. Its own exhibit, National Bank's "advice to customer" of that date, relating to the check in question, indicates that a credit takes place on collection. No receipt or bank statement evidencing such deposit is made part of the record.

event, Bank Leumi held the check until November 16 (a total of 12 days), and then returned it marked "uncollectible." In denying Bank Leumi's motion for summary judgment on the fourth cause of action, Special Term found that a factual issue existed as to whether the second presentment to Bank Leumi was merely an accommodation to the depositary bank in accordance with banking practice. In claiming "late" return of the check after the second presentment, plaintiff relies upon section 4-302 of the Uniform Commercial Code, which states: "if an item is presented on and received by a payor bank the bank is accountable for the amount of (a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline". A bank's "Midnight deadline" is "midnight on its next banking day following the banking day on which it receives the relevant item" (Uniform Commercial Code, § 4-104, subd [h]). Special Term found, and it is clear from the facts, that when Bank Leumi received the check the first time it properly dishonored it in the manner prescribed by statute. (Uniform Commercial Code, § 3-505.) Thus all parties with interests in the instrument were put on notice (see Uniform Commercial Code, § 3-508, subd [8]), and plaintiff knew that it had a dishonored instrument. Plaintiff's effort to deny the existence of the custom between banks involving the accommodation representment of a previously dishonored check is unavailing. It sought to overcome defendant's sworn factual averment as to such custom with the mere submission of an attorney's affidavit that no such banking practice existed. The affirmation of an attorney without personal knowledge of the facts is insufficient evidence to defeat a motion for summary judgment (*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496; *Fishman v Henry,* 61 AD2d 764), and for this deficiency alone summary judgment should have been granted to Bank Leumi on the fourth cause of action. The custom between banks varying the requirements of article 4 of the Uniform Commercial Code on the representment of a dishonored check for collection is expressly provided for by subdivisions (1) and (2) of section 4-103: "(1) The effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable. (2) Federal Reserve regulations and operating letters, clearing house rules, and the like, have the effect of agreements under subsection (1), whether or not specifically assented to by all parties interested in items handled." In interpreting this section, where the question was whether the local Federal Reserve Bank operating letter governed between two banks, one of which was not a signatory to the letter, the court, in *Sterling Nat. Bank & Trust Co. of N. Y. v Savings Banks Trust Co.* (NYLJ, July 26, 1976, p 6, col 3, affd on opn below 56 AD2d 789), stated: "The law is clear that the parties may agree to measure their responsibility under article 4 of the UCC by signing or otherwise approving the Federal Reserve Bank's operating letter (UCC, sec. 4-103[1])." Inspection of the "advice to customer" notice which accompanied the check on its second presentment to Bank Leumi is revealing. In a box marked "Special Instruction: (Return immediately if not paid unless otherwise instructed)" the following notation was typed in: "Please remit your

cashiers' *[sic]* check when paid." Clearly, the depository bank, by typing in these instructions after the legend "Return immediately if not paid unless otherwise instructed", was circumventing the preprinted directions and asking Bank Leumi to retain the check until payment was made. To hold otherwise would render the words "when paid" superfluous. Thus, aside from any industry custom as to an accommodation representment, Bank Leumi was relieved by the depository bank of the obligation to return the check by the midnight deadline. Plaintiff is not persuasive in arguing that it is not bound by any agreement between its depository bank and Bank Leumi, based on banking custom or otherwise, which would vary Uniform Commercial Code requirements. As already indicated, subdivision (2) of section 4-103 of the Uniform Commercial Code provides otherwise. But even if plaintiff were not bound by the provisions of the code, the fact is that by the terms of its own bank's "advice to customer" on November 4, 1976, it is charged with notice that Bank Leumi was not bound by the midnight deadline rule. It is clear that Leumi dealt only with National Bank. Bank Leumi fulfilled its obligations to National Bank, and if the latter failed to obtain its customer's consent to the manner in which the check was represented for collection, plaintiff's quarrel should only be with National Bank. Once plaintiff received notice of dishonor after Bank Leumi's return of the check on October 25, it could have taken whatever steps it perceived as necessary to protect its interests. It could have proceeded at that time against the drawer. One of the steps it did take was to ask its depository bank to represent the check to Bank Leumi for collection. Plaintiff should not be permitted to take advantage of a situation where Bank Leumi, after timely nonacceptance and dishonor, followed banking custom and the instructions of plaintiff's depository, and held the check as an accommodation pending receipt of sufficient funds in the drawer's account to cover the transaction. Accordingly, the order, Supreme Court, New York County, entered May 23, 1978, which, *inter alia,* denied defendant's motion for summary judgment on the fourth cause of action, should be modified to the extent of granting summary judgment to defendant dismissing the fourth cause of action, and except, as thus modified, the order should be affirmed.